# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMKHITH CHANTHAVONG, ) | 1:09-cv-1561 SKO |
| ) | |
| Plaintiff, ) | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. ) | (Doc. 1) |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) | |
| Defendant. ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 13.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1944, completed the twelfth grade, and previously worked as an assembler. (Administrative Record ("AR") 162, 175, 180.) On February 23, 2004, Plaintiff filed applications for DIB and SSI, alleging disability beginning on December 1, 2002, due to diabetes, peripheral neuropathy, visual deficits, hypertension, vertigo, and upper extremity osteoporosis. (AR 162-64, 276-79.)

**A.  Medical Evidence**

As further discussed below, Plaintiff raises five grounds for reversal, one of which merits remand to the Commissioner for further proceedings to clarify the Commissioner's determination at step three of the sequential disability evaluation process. Accordingly, the Court discusses the relevant evidence below.

    **1.  Sadda Reddy, M.D.**

On October 27, 2004, Sadda Reddy, M.D., a state agency medical consultant, reviewed the record and opined that Plaintiff had no exertional limitations in sitting, standing, walking or pushing/pulling, and no postural or manipulative limitations. (AR 232-41). Dr. Reddy opined that, because of sensory deficits in Plaintiff's feet, she should avoid walking on uneven terrain and unlighted areas. (AR 236.) Dr. Reddy noted that Plaintiff's diabetic neuropathy did not result in any motor deficits, she had normal gait and ranges of motion, and she had intact fine and dextrous finger control. (Tr. 233, 240.)

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 35-44, 59-74, 280-82.)

On May 17, 2006, ALJ Christopher Larsen held a hearing where Plaintiff, Plaintiff's friend, and a vocational expert ("VE") testified. The ALJ issued a decision on June 29, 2006, finding

Plaintiff not disabled. (AR 45-54, 314-40.) The Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the case to the ALJ on June 18, 2007. (AR 55-58.)

On January 21, 2009, upon remand from the Appeals Council, ALJ Larsen held a hearing where Plaintiff, a medical expert, and a VE testified. (AR 284-313.)

**1.    Plaintiff's Testimony**

At the first hearing, Plaintiff testified that she had body aches and extremity numbness due to diabetes. (AR 319, 324-25.) Plaintiff testified that she felt dizzy every day, and would fall down or faint. (AR 325-27.) Plaintiff also testified that she could not lift very much weight or sit or walk for very long. (AR 320.) Plaintiff took over-the-counter Tylenol for the pain. Plaintiff took medication for her diabetes every day. (AR 327.) Plaintiff testified that she had "severe problems" with her eyes and had corrective cataract surgery seven years ago. (AR 322.) Plaintiff testified that she currently had blurred vision and, although she had a driver's license, her doctor told her she could not drive a car. (AR 322-23.) Plaintiff did minimal household chores slowly. (AR 323-24.)

At the 2009 hearing, Plaintiff testified that her symptoms had worsened since the last hearing. (AR 289.) Plaintiff testified that she had been in Laos from 2007 until 2008. (AR 289.) Plaintiff testified that she had not received any medical care since 2006 because she did not have Medicare. (AR 289.) Plaintiff testified that her diabetes caused daily body aches, headaches and numbness in her extremities. (AR 294-95.) Plaintiff testified that she could not use her arms or hands anymore, could not sit for very long because of back and leg pain, and spent most of her day lying down. (AR 295-99.) Plaintiff testified that she could not stand or walk very well due to knee pain and swelling. (AR 299-300.)

**2.    Medical Expert Testimony**

Medical expert and neuropathy specialist Judith Willis, M.D., testified that Plaintiff's medically determinable impairments included diabetes and hypertension. (AR 302.) Dr. Willis testified that Plaintiff did not have any impairments that "met a listing," or listed impairment. (AR

3

302.) Dr. Willis did not provide any testimony, however, as to whether Plaintiff had any impairments that medically equaled a listed impairment.

Dr. Willis further testified that, other than the extremity numbness, the symptoms to which Plaintiff testified were not supported by objective findings. (AR 303-04.) Dr. Willis testified that Plaintiff retained the functional capacity for work that did not require walking on uneven terrain or in unlighted areas. (AR 306.) When asked whether Plaintiff had any manipulative restrictions due to upper extremity numbness, Dr. Willis testified that there were "no abnormalities" in function. (AR 306.)

### 3. VE's Testimony

The VE reviewed Plaintiff's work history and testimony, and characterized Plaintiff's past work as a food prep/kitchen worker as light and semi-skilled, a sewer as light and semi-skilled, a wire harness assembler as light and semi-skilled, a small-products assembler as light and unskilled, a products assembler as medium and semi-skilled, and an inspector as light and semi-skilled. (AR 309-10.) The VE testified that Plaintiff had transferable skills from her work as a sewer and food preparer. (AR 310.) The VE also testified that a person with Plaintiff's vocational background and who was limited to work that did not require walking on uneven terrain or in unlighted areas could perform all of Plaintiff's past work. (AR 310-11.)

**C.  ALJ's Decision**

On February 19, 2009, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of December 1, 2002. (AR 15-24.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was able to perform her past relevant work. (AR 20-24.)

The ALJ found that Plaintiff had the RFC to work at all exertional levels, but she had to avoid walking on uneven terrain and in unlighted areas. (AR 21.)

In finding that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ stated that "Dr. Willis, having reviewed the medical record, testified [Plaintiff] does not meet or equal any listing." (AR 21.)

As for Plaintiff's credibility, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with [the ALJ's] assessment of [Plaintiff's] residual functional capacity." (AR 23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 2, 2009. (AR 8-11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.   Plaintiff's Appeal**

On September 3, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that (1) the ALJ erred in failing to consider her vertigo; (2) the ALJ failed to address properly Plaintiff's upper extremity peripheral neuropathy and her visual deficits; (3) the ALJ erred in silently disregarding lay witness testimony; (4) the ALJ erred in determining Plaintiff's credibility; and (5) the ALJ's finding at step three is not based on correct legal standards.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

5

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **REVIEW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.

*Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments (the "Listings"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.   The ALJ's Finding at Step Three Regarding Medical Equivalence Was Erroneous**

Plaintiff contends that the ALJ's determination at step three that her impairments did not meet or medically equal a listed impairment was not based on correct legal standards. Rather. Plaintiff asserts that her impairments equal Listings 1.02A, 9.08, and 11.14. The Commissioner maintains that the ALJ properly explained that Plaintiff did not have any impairments that either met or equaled a listed impairment.

**1.   Legal Standard**

At Step Three of the five-part sequential evaluation for determining whether a claimant is disabled, the Commissioner must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Lewis*

*v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). If a claimant shows that her impairments meet or equal a Listing, she will be found presumptively disabled. 20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

For an impairment or combination of impairments to meet a Listing, all of the criteria of that Listing must be satisfied for the requisite durational period. *Zebley*, 493 U.S. at 530 (the impairment "must meet all of the specified medical criteria" in the Listing); *see also* 20 C.F.R. §§ 416.909 and 416. 925(c)(3); Social Security Ruling ("SSR") 83-19 ("[a]n impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment").

For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531; *see also* 20 C.F.R. § 416.926(a)-(b); SSR 83-19 (an impairment is "equivalent" to a Listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). In making an equivalence assessment, the claimant's impairments "'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester*, 81 F.3d at 829 (citation omitted). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 614 ("[a] finding of equivalence must be based on medical evidence only"); 20 C.F.R. § 416.929(d)(3).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis*, 236 F.3d at 512. A "boilerplate finding [at step three] is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listing. *Id.* In *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), the Ninth Circuit held that an ALJ must explain and evaluate the evidence that supports his step three finding; an ALJ's unexplained finding at step three that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings" was reversible error, because the ALJ

failed to explain adequately his evaluation of why certain medical evidence of record and/or the combined effects of the claimant's impairments did not equal the Listing in question. *Id.*

### 2. Analysis

In this case, the ALJ erroneously found that, according to Dr. Willis' testimony, Plaintiff's impairments did not meet or medically equal a listed impairment. Rather, Dr. Willis only testified that Plaintiff's impairments did not meet a listed impairment. (AR 302.) This error was not harmless because if a claimant has impairments that meet or medically equal one listed in the Listing of Impairments, the claimant is disabled without further inquiry as to RFC and ability to perform past or other work. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Thus, the ALJ's error was not inconsequential to the ultimate nondisability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (defining harmless error).

According to the Commissioner, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Here, Plaintiff has argued that her impairments equal Listings 1.02A, 9.08, and 11.14 because of her inability to ambulate effectively, which was incorporated in the ALJ's RFC finding that she must avoid walking on uneven terrain and in unlighted areas. (Doc. 19 at 14.) The Commissioner's contention that Plaintiff fails to satisfy *Burch* is, therefore, unavailing.

In addition, Plaintiff contends that (1) the ALJ erred in failing to consider her vertigo; (2) the ALJ failed to address properly Plaintiff's upper extremity peripheral neuropathy and her visual deficits; (3) the ALJ erred in silently disregarding lay witness testimony; and (4) the ALJ erred in determining Plaintiff's credibility. The Court need not consider these arguments in light of the need for reversal on other grounds. *See Marcia*, 900 F.2d at 177 n.6 ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**B.     Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted). The Court finds that remand for further proceedings is appropriate for clarification regarding the ALJ's determination at step three.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Somkhith Chanthavong and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   March 24, 2011**                             /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE