# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMKHITH CHANTHAVONG, | 1:09-cv-1561 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S APPLICATION FOR AN AWARD OF FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | (Doc. 26) |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Somkhith Chanthavong ("Plaintiff") filed a complaint on September 3, 2009, seeking reversal of the Administrative Law Judge's ("ALJ") decision denying her application for Social Security disability benefits. (Doc. 1.) On March 25, 2011, the Court issued an order finding that the ALJ decision was not supported by substantial evidence. (Doc. 24.) Specifically, the Court determined that the ALJ erred in finding that Dr. Willis' testimony indicated that Plaintiff's impairments did not meet or medically equal a listed impairment. (Doc. 24, 9:4-26.) The Court determined that Dr. Willis' testimony established only that Plaintiff's impairments did not meet a listed impairment, but Dr. Willis did not explicitly discuss whether Plaintiff's impairments equaled a listing. (Doc. 24, 9:4-26.) The Court remanded the matter for further proceedings to clarify the

1 ALJ's determination at the Third Step. (Doc. 24, 10:2-11.)  Judgment was issued in Plaintiff's favor

2 on March 25, 2011.  (Doc. 25.)

3       On June 23, 2011, Plaintiff filed an application for an award of fees and expenses pursuant

4 to the Equal Access to Justice Act ("EAJA") in the amount of $9,442.95. (Doc. 26.)  On August 8,

5 2011, Defendant filed an opposition to Plaintiff's request asserting that his litigation position was

6 substantially justified or, alternatively, that the total number of hours expended by Plaintiff's counsel

7 was not reasonable. (Doc. 30.)  On August 25, 2011, Plaintiff filed a reply to Defendant's opposition

8 which also requested a supplemental EAJA award of $2,692.65 for 15.0 hours of time spent by Mr.

9 Wilborn drafting the EAJA reply brief.   Thus, Plaintiff's total EAJA fee request amounts to

10 $12,135.60.  For the reasons set forth below, Plaintiff's application for EAJA fees is GRANTED in

11 the amount of **$9,063.86**.

12 **II.   DISCUSSION**

13 **A.   Legal Standard**

14       Pursuant to 28 U.S.C. § 2412(d)(1)(A), claimants who successfully challenge an agency

15 decision in a civil action are entitled to reasonable fees and other expenses:

16
17     [A] court shall award to a prevailing party other than the United States fees and other
expenses . . . incurred by that party in any civil action (other than cases sounding in
tort), including proceedings for judicial review of agency action, brought by or
against the United States in any court having jurisdiction of that action, unless the
18 court finds that the position of the United States was substantially justified or that
special circumstances make an award unjust.
19

20       Any application for an award of EAJA fees and other expenses must be made within thirty

21 days of final judgment in the action and "must include an itemized statement from any attorney

22 representing or appearing in behalf of the party stating the actual time expended and the rate at which

23 fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B).  The party submitting the

24 application is also required to allege that the position of the United States was not substantially

25 justified.  *Id.*   Further, the party applying for an award of EAJA fees must have an individual net

26 worth not greater than $2,000,000 at the time the civil action was filed.  *Id.* § 2412(d)(2)(B).

27       To be "substantially justified," the position taken must have a reasonable basis in law and

28 fact. *Pierce v. Underwood*, 487 U.S. 552, 556-66 (1988); *United States v. Marolf*, 277 F.3d 1156,

2

1160 (9th Cir. 2002).  Substantial justification is interpreted as being "justified to a degree that could satisfy a reasonable person" and "more than merely undeserving of sanctions for frivolousness." *Underwood*, 487 U.S. at 565; *see also Marolf*, 277 F.3d at 1161.  The fact that a court reverses and remands a case for further proceedings "does not raise a presumption that [the government's] position was not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 335 (9th Cir. 1988).  In considering whether the government's position is "substantially justified," courts consider not only the position of the United States taken in a civil action, but also the action or failure to act by the agency upon which the civil action is based. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259-60 (9th Cir. 2001); 28 U.S.C § 2412(d)(2)(D).  Thus, courts "must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Kali*, 854 F.2d at 33.

In considering the issue of substantial justification in *Le v. Astrue*, the Ninth Circuit held that the government's position that a doctor whom the claimant had visited five times over three years was not a treating doctor, while incorrect, was substantially justified since a non-frivolous argument could be made that the five visits over three years were not enough under the regulatory standard, especially given the severity and complexity of the claimant's alleged mental problems.  529 F.3d 1200, 1201-02 (9th Cir. 2008).

In *Lewis v. Barnhart*, the court determined that the government's defense of an ALJ's erroneous characterization of the claimant's testimony was substantially justified.  281 F.3d 1081 (9th Cir. 2002).  In that case, the ALJ had reviewed the claimant's testimony about her past work at a gas station and resolved ambiguities in her testimony against her. *Id.* at 1084.  Although the district court disagreed with the conclusion reached by the ALJ and remanded the matter, on appeal of the claimant's fee request that was denied by the district court, the appellate court determined that the ALJ had a reasonable basis in fact for the underlying decision because there were facts that cast doubt on the claimant's subjective testimony about her past work. *Id.* at 1084.  Further, the defendant's position to defend the ALJ's error had a reasonable basis in law because an ALJ must assess a claimant's testimony and may use that testimony to define past relevant work as actually

3

1  performed.  *Id.*  The Ninth Circuit, therefore, affirmed the district court's determination that

2  Defendant's position was substantially justified.  *Id.* at 1086.

3       In contrast, however, where the government violates its own regulations, fails to acknowledge

4  settled circuit case law, or fails to adequately develop the record, its position will not be held to be

5  substantially justified.  *Gutierrez*, 274 F.3d at 1259-60.  For example, in *Sampson v. Chater*, the

6  ALJ's failure to make necessary inquiries of the unrepresented claimant and his mother to determine

7  the onset date of disability, as well as the ALJ's disregard of substantial evidence establishing the

8  onset date of disability, led the court to hold that the ALJ's actions, and the defendant's defense of

9  those actions, were not substantially justified.  103 F.3d 918, 921-22 (9th Cir. 1996); s*ee also Flores*

10 *v. Shalala*, 49 F.3d 562, 570-72 (9th Cir. 1995) (finding ALJ and Commissioner not substantially

11 justified where ALJ ignored a medical report); *Crowe v. Astrue*, No. CIV S-07-2529 KJM, 2009 WL

12 3157438, at *1 (E.D. Cal. Sept. 28, 2009) (no substantial justification in law or fact based on

13 improper rejection of treating physician opinions without providing a basis in the record for doing

14 so); *Aguiniga v. Astrue*, No. CIV S-07-0324 EFB, 2009 WL 3824077, at *3 (E.D. Cal. Nov. 13,

15 2009) (no substantial justification where ALJ repeatedly mischaracterized the medical record,

16 improperly relied on non-examining physician that contradicted clear weight of medical evidence,

17 and improperly discredited claimant's subjective complaints as inconsistent with the medical record).

18 **B.    Neither the Agency Nor Defendant was Substantially Justified**

19      On February 23, 2004, Plaintiff filed applications for Disability Insurance Benefits and

20 Supplemental Security Income, alleging disability beginning on December 1, 2002, due to diabetes,

21 peripheral neuropathy, visual deficits, hypertension, vertigo, and upper extremity osteoporosis. (AR

22 162-64, 276-79.)

23      On October 27, 2004, Sadda Reddy, M.D., a state agency medical consultant, reviewed the

24 record and opined that Plaintiff had no exertional limitations in sitting, standing, walking, or

25 pushing/pulling, and no postural or manipulative limitations. (AR 232-41.) Dr. Reddy opined that,

26 because of sensory deficits in Plaintiff's feet, she should avoid walking on uneven terrain and

27 unlighted areas. (AR 236.) Dr. Reddy noted that Plaintiff's diabetic neuropathy did not result in any

28

4

1    motor deficits, she had normal gait and ranges of motion, and she had intact fine and dextrous finger

2    control.  (AR 233, 240.)

3          On June 29, 2006, following a hearing, the Administrative Law Judge ("ALJ") found Plaintiff

4    not disabled. (AR 45-54, 314-40.)  With respect to whether Plaintiff's impairments met or medically

5    equaled a listed impairment, the ALJ found as follows:

6          As presented in more detail below, Mr. Changthavong does not have neuropathy
           demonstrated by significant and persistent disorganization of motor function in two
7          extremities resulting in sustained disturbance of gross and dexterous movements, or
           gait and station.  She does not have acidosis occurring at least on the average of once
8          every two months documented by appropriate laboratory tests; nor does she have
           retinitis proliferans.  Therefore, Ms. Changthavong does not meet section 9.08 of the
9          Listing of Impairments.

10   (AR 50.)

11         On June 18, 2007, the Appeals Council granted Plaintiff's request for review of the ALJ's

12   decision. (AR 55-58.) On remand, the Appeals Council specifically instructed that the ALJ consider

13   Plaintiff's impairments including vertigo, osteoporosis in the right hand, and her complaints that her

14   right hand was weak and lifting heavy objects with her right dominant hand caused her pain.  (AR

15   56.)  Further, the ALJ was instructed to "[o]btain evidence from a neurologist medical expert to

16   clarify the nature and severity of the claimant's impairments" and to discuss "whether the claimant's

17   impairment meets or equals the severity of an impairment" listed in 20 C.F.R. Part 404, Subpart P,

18   Appendix 1 (the "Listing(s)").  (AR 57.)

19         In a concerted effort to comply with the Appeal Council's remand order, the ALJ held another

20   hearing on remand and solicited testimony from a neurological medical expert, Dr. Judith A. Willis,

21   regarding Plaintiff's neuropathy.  Dr. Willis testified that Plaintiff did not have any impairments that

22   "met a listing" or listed impairment. (AR 302.) Dr. Willis did not provide any testimony, however,

23   as to whether Plaintiff's impairments medically equaled a Listing.

24         Dr. Willis opined that, other than the extremity numbness, the symptoms to which Plaintiff

25   testified were not supported by objective findings. (AR 303-04.) Dr. Willis testified that Plaintiff

26   retained the functional capacity for work that did not require walking on uneven terrain or in

27   unlighted areas. (AR 306.) When asked whether Plaintiff had any manipulative restrictions due to

28

                                          5

1   upper extremity numbness, Dr. Willis testified that there were "no abnormalities" in function.  (AR

2   306.)

3       On February 19, 2009, the ALJ issued a decision finding Plaintiff not disabled.  (AR 15-24.)

4   While the ALJ determined that Plaintiff had severe impairments including diabetes, hypertension,

5   and peripheral neuropathy, the ALJ also determined that Plaintiff had only a mild to moderate

6   osteoporosis of the right hand.  (AR 20-21.)  The ALJ found that Plaintiff's fine and dexterous finger

7   control was intact and, while there was some decrease in sensation due to mild sensory diabetic

8   neuropathy, there was no loss of motor function or range of motion.  (AR 21.)  With regard to

9   whether Plaintiff's impairments met or medically equaled a Listing, the ALJ determined that "Dr.

10  Willis, having reviewed the medical record, testified Ms. Chanthavong does not meet or equal any

11  listing."  (AR 21.)

12      The Court determined that the ALJ's finding as to whether Plaintiff's impairments medically

13  equal a Listing was inadequate because it was specifically predicated on an opinion of Dr. Willis that

14  was not actually contained in the record.  Although the ALJ took steps to comply with the Appeal

15  Council's remand order by soliciting hearing testimony from a neurology medical expert, the ALJ

16  did not question Dr. Willis as to whether Plaintiff's impairments medically *equaled* a Listing, only

17  whether Plaintiff's impairments *met* a Listing.  The ALJ expressly rested his finding as to medical

18  equivalence on Dr. Willis' testimony that Plaintiff's impairments were not medically equivalent to

19  a Listing.  Dr. Willis, however, offered no such opinion.

20      The ALJ's mistaken characterization of Dr. Willis' testimony and subsequent reliance on that

21  mistake in making findings at the Third Step was not substantially justified.  The ALJ did not

22  conclude generally that the medical evidence of record did not support a finding that Plaintiff's

23  impairments medically equal a Listing or that Dr. Willis' testimony as a whole did not support a

24  finding of medical equivalence.  Rather, the ALJ specifically asserted that Dr. Willis testified that

25  Plaintiff's impairments did not medically equal a Listing, and stated this was the basis for finding that

26  Plaintiff was not disabled at the Third Step.  The mistaken characterization of Dr. Willis' testimony

27  is a type of basic and fundamental error that is difficult to justify.  The evidence on which the ALJ

28  relied in making his finding simply did not exist.

6

The ALJ's error in attributing to Dr. Willis testimony that she did not actually provide and then relying on that "testimony" as the specific basis to find that medical equivalency to a Listing was not established is the type of error that is more analogous to the error considered in *Sampson* than the error found substantially justified in *Le.*  In *Sampson* the ALJ was found to have not been substantially justified in mischaracterizing the medical evidence and failing to take account of testimony. 103 F.3d at 922.  Here, the ALJ mischaracterized the evidence to include an opinion that did not exist and relied exclusively upon that opinion as substantial evidence to support the decision at the Third Step. It is impossible to definitively conclude that the ALJ, when referring to Dr. Willis' testimony about medical equivalence with a Listing, meant all of Dr. Willis' testimony considered collectively.  This is particularly so because Dr. Willis expressly testified that Plaintiff did not "meet" a Listing. (AR 302.)  Thus, when the ALJ rested his Third Step finding on the basis that "Dr. Willis, having reviewed the medical record, testified Ms. Chanthavong does not meet or equal any [L]isting" (AR 21), it appears the ALJ determined that Dr. Willis actually provided direct testimony on medical equivalence in the same way Dr. Willis did regarding whether Plaintiff met a Listing.  Under these circumstances, it appears that the ALJ's decision rested on particular testimony that did not exist. In light of the Appeals Council's remand order specifically directing the ALJ to develop expert evidence regarding whether Plaintiff's condition met or equaled a Listing, the misconstruction of Dr. Willis' testimony calls into question whether the ALJ adequately developed the record.

The situation would be different, and much more analogous to *Le v. Astrue*, if the ALJ had stated that the medical evidence provided by Dr. Willis – as opposed to her testimony regarding equivalence – indicated that Plaintiff's condition did not equal a Listing.  In *Le*, while the ALJ's conclusion was found to be erroneous, the ALJ's basis for the reaching the conclusion was reasonable in fact and law.  529 F.3d at 1201-02.  Here, if the ALJ had predicated the Third Step finding on the medical evidence provided by Dr. Willis and other physicians, there might have been a reasonable basis in fact and law for *that* finding.  Unfortunately, the rationale for the ALJ's decision at the Third Step appears to misconstrue Dr. Willis' testimony at the hearing, rendering the finding factually unreasonable.

As the ALJ's error cannot be found substantially justified, there is no need to consider whether the government's litigation position was substantially justified. *Andrew v. Bowen*, 837 F.2d 875, 880 (9th Cir. 1988); *Brienzo v. Astrue*, No. CIV S-06-0864-KJM, 2008 WL 1734612, at * 2 (E.D. Cal. Apr. 11, 2008) (unexplained inconsistencies in ALJ's evaluation of the medical evidence was not substantially justified, thus analysis of whether government's litigation position was substantially justified was not necessary).  As the ALJ's underlying action was not substantially justified, an award of fees under EAJA is appropriate.

**C.     Reasonableness of Plaintiff's EAJA Fee Request and Hours Expended by Counsel**

As an alternative argument, Defendant asserts in his opposition to Plaintiff's Application for an award of EAJA fees that the amount of the fees requested is unreasonable.  Specifically, Defendant contends that expending nearly 54 hours, as Plaintiff's counsel did here, is unreasonable in light of the fact that routine social security cases are typically litigated in 15 to 40 hours of attorney work by the claimant's counsel.  (Doc. 30, 6:23-8:10.)  Defendant also takes issue with the amount of time Plaintiff's counsel expended drafting a reply brief, time expended reviewing various documents, and time spent preparing the EAJA application.  (Doc. 30, 8:11-9:22.)

Plaintiff counters that a reasonable amount of time for an attorney to expend in litigating a routine social security appeal is between 20 to 40 hours by pointing to various district courts that have found more than 40 hours of attorney time expended to be reasonable.  Plaintiff further asserts that all the time expended by counsel in preparing the briefs and reviewing documents was necessary and accomplished in a reasonable amount of time.  Thus, Plaintiff contends that the amount of the fees requested is reasonable and should be awarded in full.  (Doc. 31, 12-27.)

**D.     Reasonableness of the Fees**

The Court must determine what amount constitutes a reasonable award of attorney's fees.  *See* 28 U.S.C. § 2412(d)(2)(A); *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992) (district court has an independent duty to review plaintiff's fee request to determine its reasonableness).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  "The [Court] must determine

not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). "'Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). The applicant bears the burden of demonstrating the reasonableness of the fee request. *Blum*, 465 U.S. at 897.

### 1.     Hourly Rates

Plaintiff requests $172.24 per hour for work performed by her counsel in 2009, $175.06 for work performed by her counsel in 2010, and $179.51 for work performed by her counsel in 2011, which are the applicable statutory maximum hourly rates under EAJA, adjusted for increases in the cost of living, as published by the Ninth Circuit on its website pursuant to 28 U.S.C. § 2412(d)(2)(A), *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005), and Ninth Circuit Rule 39-1.6. These hourly rates are not opposed by Defendant. Further, these rates have been considered reasonable in other social security cases in this district, *see, e.g., Roberts v. Astrue*, No. 1:09-cv-1581-DLB, 2011 WL 2746715, at * 4 (E.D. Cal. July 13, 2001); thus there is no basis to reduce the hourly rates requested here.

### 2.     Hours Expended and Fees Requested Pursuant to EAJA

As to hours expended, Plaintiff seeks attorney's fees for 16.3 hours of work performed by Ms. Sengthiene Bosavanh, Esq. as well as 37.75 hours expended by Mr. Ralph Wilborn, Esq. In her brief in reply to Defendant's opposition to the EAJA Application, Plaintiff submits a request for an award of supplemental EAJA fees for the 15.0 hours expended by Mr. Wilborn drafting the EAJA reply brief. Plaintiff therefore seeks a total of 69.05 hours (16.3 + 37.75 + 15.0) for attorney work performed in conjunction with this action.

Defendant asserts that 54.05[1] attorney-work hours expended is an unreasonable amount of time for Plaintiff's counsel to expend litigating the merits of this case. Defendant asserts that several courts have determined that the average number of hours expended on social security disability

---

[1] As Plaintiff's supplemental EAJA request was appropriately contained in the EAJA reply brief for time expended drafting the EAJA reply, leave to file a sur-reply objecting to the supplemental request was not sought.

1    appeals before district courts generally range between 20 to 40 hours.  (Doc. 30, 6:23-7:16.)  Thus,

2    Defendant contends that, to be reasonable, the number of hours expended by Plaintiff's counsel here

3    should be reduced to comport with the general average in most routine social security appeals,

4    particularly in light of the fact that the record in this case was only 340 pages, and none of the issues

5    presented was particularly difficult or novel.  (Doc. 30, 8:1-10.)

6         The Court agrees generally with the proposition that 20 to 40 hours of attorney time spent

7    on a social security appeal may represent an appropriate starting-point or benchmark.  *See, e.g.,*

8    *Patterson v. Apfel*, 99 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000).  Here, Plaintiff requests an award

9    of EAJA for 54.05 hours of time her attorneys expended litigating her case plus a supplemental

10   award for 15.0 hours of time her attorneys expended replying to Defendant's opposition to Plaintiff's

11   EAJA application. Thus, the total number of attorney hours for which Plaintiff seeks compensation

12   amounts to 69.05.  On its face, this amount of time is not substantially greater than what other courts

13   have deemed appropriate.  *See id.*  While some reduction in the amount of time expended by

14   Plaintiff's counsel is warranted, Defendant's suggestion that the Court should reduce wholesale the

15   number of compensable attorney hours to comport with a perceived "average," is too simplistic an

16   approach.  *Hensley*, 461 U.S. at 429 ("The amount of the fee [awarded], of course, must be

17   determined on the facts of each case.").  Rather than performing a wholesale reduction in the number

18   of hours requested, the Court has reviewed the billing time entries that Plaintiff's counsel submitted

19   in support of the EAJA application and, for the reasons set forth below, finds that a reduction in the

20   time expended by Plaintiff's counsel is warranted.

21        **3.    Hours Expended By Ms. Bosavanh, Esq.**

22            **a.    Time Expended Reviewing Documents and Court Filings**

23        First, the descriptions following three of Ms. Bosavanh's time entries appear to either be

24   mistakes or are insufficiently documented such that it is not clear that the task accomplished is

25   compensable.  Specifically, the billing entry on September 3, 2009, indicates 0.2 hour was spent to

26   "[r]eview court orders and related documents for submission of information requested by judge."

27   (Doc. 26-2, p. 3.)  However, the docket reflects that no court orders were entered on or prior to that

28   date.  In fact, as of September 3, 2009, which is the date the complaint was filed, the only entries on

1  the docket are those generated by Plaintiff's filings.  This billing entry appears to be a mistake and

2  is not compensable.

3       With respect to the time expended on December 1, 2010, and February 23, 2011, to "check

4  court docket," no event in the docket appears on those dates.  Counsel is participating in electronic

5  filing and checking the docket in the absence of e-notification of a new docket entry is generally

6  unnecessary.  Further, as these entries are billed together with an entry for "teleconference with

7  client" and it is unclear how much time counsel spent doing which, Plaintiff has not met her burden

8  of establishing the amount of time spent on either task.  *See Hensley*, 416 U.S. at 433 (it is the fee-

9  applicant's burden to submit "evidence supporting the hours worked and rates claimed").  Thus a

10  reduction of 0.1 hours spent on each task on December 1, 2010, and February 23, 2011, for a total

11  reduction of 0.2, is warranted.

12       Moreover, when considering the remainder of Ms. Bosavahn's billing entries in total, the

13  amount of time spent reviewing documents is unreasonable.  Six-minute billing increments, which

14  is how Ms. Bosavanh's time entries are recorded and presented, can be problematic when small tasks

15  that require less than six minutes are recorded separately.  Six minute billing increments can result

16  in a rounding-up that over-calculates the time actually spent on the tasks in total.  Thus, for example,

17  eight separate tasks that require one minute each (for a total of eight minutes of billable time) and

18  are billed as eight discrete six-minute tasks for a total of 42 minutes.  As a result, eight minutes of

19  actual time spent generates billing entries of 42 minutes.  Repeated 0.1 entries (six minutes) for tasks

20  that require less than six minutes each will ultimately reflect more time than that actually expended.

21  Ms. Bosavanh provides the following time entries which, when considered in total, are unreasonable:

22  09/03/09     "Review court docket filing"                                    0.1

23  09/04/09     "Review court order granting motion to proceed IFP

24              and related documents"                                          0.2

25  09/07/09     "Prepare documents to proceed before magistrate judge"          0.2

26  09/09/09     "Review court document notice"                                  0.1

27  09/11/09     "Review notice and review docket"                               0.1

28  09/16/09     "Review return receipt from [Commissioner] and [AUSA]"          0.1

| | | |
|---|---|---|
| 09/30/09 | "Review return receipt from Attorney General" | 0.1 |
| 10/25/09 | "Review consent to jurisdiction by magistrate judge by OGC" | 0.1 |
| 10/25/10 | "Review notice of lodging of transcript" | 0.1 |
| 01/05/10 | "Review acknowledgment of receipt of transcript" | 0.1 |
| 03/20/10 | "Review court docket notice" | 0.1 |
| 03/23/10 | "Review court docket re: order signed" | 0.1 |
| 04/07/10 | "Review court order by Judge Ishii re: judge reassignment" | 0.1 |
| | **Total** | **1.5 hours** |

While the Court appreciates the need for counsel to review court orders and the docket, the total billed for reviewing documents above is unreasonable when each event is recorded as a discrete six-minute event. Multiple 0.1 or 0.2 time entries for review of single-page documents in the record, such as notices and minute orders, resulted in an unreasonable accumulation of time. This is particularly evident when the entry for time spent reviewing the Court's 10-page order was a total of 0.1 – while reviewing multiple one-page procedural orders required 1.5 hours to complete. (*See* Doc. 26-2, p. 3 ("03/25/11 Review court order reversing and remanding case 0.1").)

Moreover, social security appeals proceed along a very routinized schedule in this district that is the same in every case. Thus, the scheduling orders issued in all social security cases in this district are virtually identical, even among different judges. Given the routine nature of these orders, counsel familiar with this district's scheduling orders would not require more than five minutes to review such an order. Further, the court's order granting IFP status here was a one-page order with the Magistrate Judge's signature affixed to Plaintiff's check-box application. (Doc. 5.) Review of this order would have taken a very minimal amount of time. Additionally, "prepar[ing] documents to proceed before magistrate judge" on September 7, 2009, involved checking one box and signing a single form. (*See* Doc. 9.) Given counsel's familiarity with these documents, it is unreasonable to bill 6 or 12 minutes of attorney time for such activities. Review or completion of these documents by a practitioner thoroughly familiar with social security appeals in this district, as counsel of record is here, should require no more than two to three minutes (or less) per task. While these activities

do take time, billing judgment must be exercised in reviewing the accumulation of 0.1 billing entries and comparing such entries to the time actually expended performing these tasks.

In sum, the Court finds that only 0.5 is warranted for review and preparation of the above documents, and the additional 1.0 hour requested is unreasonable.  As approximately 60% of these time entries were performed in 2009 and 40% of the time entries were entered in 2010, the Court will reduce .6 hours at the 2009 rate and 0.4 hours at the 2010 rate.

Further, as set forth above, the Court reduces 0.2 hour expended on September 3, 2009, 0.1 hour expended on December 1, 2010, and 0.1 hour expended on February 23, 2011.

### b.    Time Expended Reviewing Mr. Wilborn's Work

While the Court recognizes that Ms. Bosavanh must review Mr. Wilborn's work before it is filed with the Court because she, and not Mr. Wilborn, is the attorney of record, the description of her work in reviewing Mr. Wilborn's briefs does not indicate that any editing was performed or that anything was done beyond reading the brief.  Without a description indicating what the review of the briefs entailed, the Court finds that 1.2 hours to read Mr. Wilborn's confidential letter brief on January 28, 2010, another 1.1 hours to review the opening brief on April 26, 2010, and 0.7 hour to review the reply brief on June 20, 2010,[2] was unreasonable.  Without any indication what the "review" entailed, the Court finds that critically reading the briefs, without performing any research or editing (such as a partner at a law firm might contribute to an associate's work), reasonably required only 1.0 hour in total.  Thus, 2.0 hours of Ms. Bosavanh's time reviewing Mr. Wilborn's briefs will be reduced as unnecessary.

Defendant asserts that some of Ms. Bosavanh's time is duplicative of that of Mr. Wilborn. Specifically, Defendant argues that 1.3 hours of Ms. Bosovanh's time spent reviewing the contents of the transcript on January 6, 2010, as well the time she spent reviewing Defendant's briefs on February 25, 2010 (0.2 hours), and May 19, 2010 (0.6 hours), were duplicative of the work

---

[2] The time entry on June 20, 2010, appears to mistakenly reference reviewing and filing Mr. Wilborn's "opening brief," but the record reflects it was the reply brief that was filed on that day.  This appears to be a typographical error in Plaintiff's counsel's affidavit.  (*Compare* Doc. 26-2, p. 3, time entry on "06/20/10," *with* Doc. 23.)

1  performed by Mr. Wilborn.  (Doc. 30, 8:22-27 (quoting *Stairs v. Astrue*, No. 1:10-cv-00132-DLB,

2  2011 WL 2946177, at * 2 (E.D. Cal. July 21, 2011).)

3        On several occasions, this court has reviewed the arrangement between Ms. Bosavanh and

4  Mr. Wilborn and observed that "Mr. Wilborn is performing a majority of the research and brief

5  writing.  Therefore, certain time spent performing duplicative work will not be compensated.  The

6  Government should not be forced to pay increased fees simply because Ms. Bosavanh has decided

7  to employ another attorney to actually write the briefs." *Roberts v. Astrue*, No. 1:09-cv-01581-DLB,

8  2011 WL 2746715, at *6 (E.D. Cal. July 13, 2011); *see also Stairs*, 2011 WL 2946188, at *2

9  (finding that fees are "not warranted" for receiving and checking the contents of the transcript);

10  *Singmoungthong v. Astrue*, No. 1:09-cv-1328-DLB, 2011 WL 2746711, at * 5 (E.D. Cal. July 13,

11  2011) (Ms. Bosavanh's time reviewing and forwarding documents to Mr. Wilborn is duplicative and

12  not compensable); *Kimzey v. Astrue*, No. 1:09-cv-01808-JLT, 2011 WL 5101941, at * 4 (E.D. Cal.

13  Oct. 25, 2011) (fees for Ms. Bosavanh's review of the transcript and Defendant's opposition to the

14  opening brief not awarded).

15        Mr. Wilborn's review of the record and Defendant's briefs is necessarily and  substantively

16  embedded into the briefs he drafts.  Ms. Bosavanh is compensated for the time spent reviewing Mr.

17  Wilborn's work.  While Ms. Bosavanh's time spent reviewing Mr. Wilborn's work is compensable

18  because she is filing that product as her own, her additional review of Defendant's briefs and the

19  administrative record that have already been reviewed by Mr. Wilborn and incorporated into his

20  briefs, is duplicative and unnecessary.  Thus, 2.1 hours will be reduced for these duplicative tasks.

21          **c.**     **Time Spent on the EAJA Application**

22        Defendant objects to the time Ms. Bosavanh spent preparing documentation in support of

23  Plaintiff's EAJA application.  The objection is generally predicated on the argument that Ms.

24  Bosavanh submits many EAJA declarations regarding her time spent on behalf of her clients and the

25  similarities of these billing statements and declarations could not require the 1.4 hours she has billed

26  in this case for completing those tasks.

27        For purposes of preparing a declaration to support an EAJA application, an attorney is

28  generally required to calculate her time spent on the subject litigation (as opposed to time related to

administrative proceedings prior to the civil action) and review the descriptions of time to be certain they do not contain privileged or confidential information. As Ms. Bosavanh's time entry related to reviewing her billing records is contained in a block of 1.5 hours on June 14, 2011, for two different tasks ("Review docket and case notes; prepare time documents"), it is not clear how much time was spent reviewing time entries or drafting her declaration supporting the EAJA application; thus a reduction of this time is warranted. *See Hensley*, 416 U.S. at 433 (it is the fee-applicant's burden to submit "evidence supporting the hours worked").

Moreover, because clients are not properly charged for their attorneys' time spent creating a billing statement, time spent creating time entries or reviewing them for accuracy is not compensable. *See Hensley* 461 U.S. at 43 ("'In the private sector, "billing judgment" is an important component in fee setting. It is not less important here. Hours that are not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory authority.'" (quoting *Copeland*, 641 F.2d at 891)). However, the time spent preparing a declaration in support of an EAJA application and reviewing time entries to ensure they contain no confidential information is appropriate and compensable. Because the billing entry does not establish what time was expended on each of these discrete tasks, it is difficult to determine whether any of the requested amount is reasonable. The Court finds that 0.5 hour is a reasonable amount of time to review descriptions in billing entries, select relevant entries for inclusion in the EAJA application, and complete a declaration. Thus, Ms. Bosavanh's time expended in reviewing her time-entry descriptions and drafting her declaration warrants a reduction of 1.0 hour.

### f.      Conclusion

As set forth above, the Court reduces 6.5 hours from the time expended by Ms. Bosavanh. The hours are reduced as follows:

|      |      |      |
|------|------|------|
| 2009 | 6.0 hours requested, 0.8 hours reduced | (5.2 hours x 172.24 = $895.65) |
| 2010 | 8.3 hours requested, 4.6 hours reduced | (3.7 hours x 175.06 = $647.72) |
| 2011 | 2.0 hours requested, 1.1 hours reduced | (.9 hours x 179.51 = $161.56) |

**Total:        16.3 Hours Requested; 6.5 Hours Reduced (9.8 hours = $1,704.93)**

///

**4.      Time Expended by Mr. Wilborn, Esq.**

  **a.      Time Spent on the Reply Brief**

  Mr. Wilborn spent a total of 21.75 hours drafting a reply brief responding to Defendant's opposition brief. (Doc. 16-3, p. 1.) Defendant asserts this is unreasonable. Plaintiff contends that the reply brief was an especially onerous drafting task because of the "numerous misrepresentations [in Defendant's brief] necessitating thorough rebuttal." (Doc. 31, 13:16-18.) Under these circumstances, Plaintiff asserts that 21.75 hours was a reasonable amount of time to spend drafting the reply brief.

  Mr. Wilborn presents his time entries in block-billing format. Block billing refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996). "Block billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended." *Aranda v. Astrue*, No. CV 08-340-MA, 2011 WL 2413996, at *5 (D. Or. June 8, 2011). However, while "the fee applicant bears the burden of submitting 'evidence supporting the hours worked and the rates claimed,'" counsel is "'not required to record in great detail how each minute of his time was expended.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley,* 461 U.S. at 437 n.12.). Thus, in *Fischer*, the Ninth Circuit explained that, rather than refusing to award any fees where documentation is insufficient because of block-billing, the court should either request more information or "simply reduce[] the fee to a reasonable amount." *Id.* (citing *Hensley*, 461 U.S. at 433 for the proposition that a district court can "reduce" the fee award where the documentation is inadequate).

  Here, while Mr. Wilborn's time spent on the reply brief is compensable, the large block-billing entries do not delineate how much time was expended on the tasks recorded in each entry. For example, Mr. Wilborn spent 6.0 hours on June 16, 2010, on several tasks including re-reading the ALJ's decision, re-reading Plaintiff's opening brief, reading and analyzing Defendant's brief, reviewing the administrative record, and partially researching and drafting the brief. (Doc. 26-3, p.

1.)  Mr. Wilborn also spent 8 hours drafting "the <u>Hoopai</u> argument in response to Defendant's reliance on that case."  (Doc. 26-3, p. 1.)

While the Court appreciates the need for Mr. Wilborn to reacquaint himself with the facts and the record, there are three separate entries that relate to reviewing and re-reading the ALJ's decision.  Without any indication of how much time was spent in the block-billed entries, some of this time appears duplicative and redundant.  Specifically, Mr. Wilborn spent 9.5 hours reviewing the record, researching, and drafting Plaintiff's confidential brief on January 27, 2010.  (Doc. 26-3, p. 1.)  Mr. Wilborn also expended 3.0 hours on April 18, 2010, an unspecified amount of which was spent "re-read[ing] the administrative record."  (Doc. 26-3, p. 1.)  On June 16, 2010, Mr. Wilborn spent 6.0 hours on various tasks, an unspecified amount of which was dedicated to "review [of] the administrative record."  The block-billing contributes to the appearance of redundancy and thus a 3.0-hour reduction is warranted.  *See Fischer*, 214 F.3d at 1121.

Finally, the 8.0 hours spent reviewing one case and distinguishing it on June 17, 2010, is excessive.  A reduction of 3.0 hours is necessary with regard to this time entry, particularly in light of the fact that the amount of total time spent drafting the brief is unclear given the block-billed time entries.

In total, the Court will reduce the 6.0 hours from the time spent awarding a total of 15.75 hours for Mr. Wilborn's work on the reply brief.

### b.      Time Spent on the Initial EAJA Application

Defendant asserts that the 1.5 hours Mr. Wilborn expended in preparation of the EAJA application, including his declaration, was excessive because of the repetitive nature of EAJA applications filed by Plaintiff's counsel in all their cases.  While Defendant is correct that much of the EAJA application and declaration contain "boilerplate" language that has been used in other EAJA applications prepared by Mr. Wilborn, the Court does not find 1.5 hours unreasonable for Mr. Wilborn to review the file, review his time expended, and prepare the EAJA application, even in light of the fact that portions of the documents contain boilerplate language.  Even documents that contain "boilerplate" language require some review.

c.      **Time Spent on Reply Brief Regarding EAJA Application**

The time Mr. Wilborn expended in drafting the reply to Defendant's opposition to Plaintiff's EAJA application is also block-billed.  On August 24, 2011, Mr. Wilborn expended 10 hours completing research, drafting the EAJA reply brief, and drafting a declaration.  Again, block-billing makes determining the reasonableness of this time expenditure difficult because the time spent on any one of these particular activities is not denoted.  The block time entry on August 24, 2011, appears duplicative because Mr. Wilborn also expended 5.25 hours on August 23, 2011, an unspecified amount of which was also spent drafting the EAJA reply brief.  Ultimately, it is unclear how much time was expended actually drafting the reply brief as opposed to other tasks.  Thus, without a specification of the time spent on various tasks, some of the entries for drafting appear excessive.  *See, e.g., Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format.  The fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked.")

Additionally, although Mr. Wilborn stated that he reduced his hours in an exercise of billing judgment from 20.0 to 15.0 for his time expended on the reply brief, the activities that comprised the reduced time are unrecorded and unknown.  Thus, a reduction of 5.0 hours of the 15.0 hours billed is warranted for time expended on the EAJA reply brief.

d.      **Conclusion**

As set forth above, the Court finds that a reduction of certain time expenditures by Mr. Wilborn is warranted.  The award of fees for Mr. Wilborn's time is as follows:

| | | |
|---|---|---|
| 2009 | 0.75 hours requested, no hours reduced | (0.75 hours x 172.24 = $129.18) |
| 2010 | 35.25 hours requested, 6.0 hours reduced | (29.25 hours x 175.06 = $5,120.51) |
| 2011 | 16.75 hours requested, 5.0 hours reduced | (11.75 hours x 179.51 = $2,109.24) |
| **Total:** | **52.75 hours requested, 11 hours reduced** | **(41.75 hours = $7,358.93)** |

**E.      Civilized Discourse and Disagreement**

As a final note, the Court is aware of an increasing incivility in the papers submitted in this and other cases with regard to EAJA fee disputes between Plaintiff's counsel and Defendant.  Two Magistrate Judges in this district have commented directly on this concern, and a recent decision has admonished unprofessional conduct:

> Earlier this year, Judge Beck noted the "growing animosity between the parties."  *Belcher v. Astrue* (1:09-cv-1234-DLB), Doc. 41 at 5.  In the reply brief in this motion, Mr. Wilborn's anger at the Commissioner's opposition to his fee requests has blossomed in unprofessional *ad hominem* attacks.  Among other things, the reply brief accuses the Commissioner of "bad faith harassment" (Doc. 26 at 4) and of "unabated" litigation against Bosavanh's and Wilborn's fee requests (Doc. 26 at 10). . . . [Such conduct] has no place in this Court.

*Reyna v. Astrue*, No. 1:09-cv-01970-SMS, Doc. No. 27, 12:13-18, 13:2 (E.D. Cal. Dec. 6, 2011).

The undersigned shares Judges Beck and Snyder's concerns and joins Judge Snyder's admonishment.[3]  The fact that many of Plaintiff's counsels' EAJA fee requests have been reduced in several cases[4] is an indication that Defendant's opposition to those requests is often reasonable and persuasive for the proposition that some of the time expended in the underlying litigation was unreasonable. The record does not reflect that Defendant's opposition to the EAJA fee request constitutes harassment, and the fact that Plaintiff's counsel does not share Defendant's interpretation of various case law does not mean Defendant's position is tantamount to an effort to commit fraud upon the Court.

---

[3] Here, the reply brief states that "[t]he Commissioner's argument is nothing more than bad faith harassment," (Doc. 31, 12:8), asserts that the Commissioner's opposition brief "contain[ed] numerous misrepresentations," (Doc. 31, 13:17-18), and that the Commissioner exhibits a "blatant disregard for the truth in the Commissioner's representations to this Court . . . [which] requires extra research and attention to detail on the part of Plaintiff's counsel to ensure that the Commissioner's unchallenged misrepresentations . . . [do not] mislead the Court" (Doc. 31, 14:5-10).  The fact that the Commissioner presents an interpretation of the case law that differs from opposing counsel does not mean the Commissioner's interpretation blatantly disregards the truth.  The essence of civil litigation often boils down to reasonable disputes over the meaning and interpretation of both case law and statutory authority.  The Commissioner cannot be faulted for proffering an interpretation of the cases with which Plaintiff's counsel does not agree.  Reasonable minds may differ; if they did not, dissenting opinions in appellate decisions, for example, would not exist.

[4] *See Singmoungthong v. Astrue*, No. 1:09-cv-01328-DLB, 2011 WL 5592864 (E.D. Cal. Nov. 16, 2011); *Adkins v. Astrue*, No. 1:09-cv-02031-SKO, 2011 WL 5299297 (E.D. Cal. Nov. 2, 2011); *Kimzey v. Comm'r of Soc. Sec.*, No. 1:09-cv-01808-JLT, 2011 WL 5101941 (E.D. Cal. Oct. 25, 2011); *Fontana v. Astrue*, No. 1:10-cv-0932-DLB, 2011 WL 2946179 (E.D. Cal. July 21, 2011).

1

### III.   CONCLUSION

2         For the reasons set forth above, Plaintiff is entitled to a reasonable award of attorney's fees

3   pursuant to EAJA.

4         Accordingly, IT IS HEREBY ORDERED that:

5       1.    Plaintiff's Application for an award of her reasonable attorney's fees pursuant to

6           28 U.S.C. § 2412 is GRANTED in the amount of **$9,063.86**;

7           a.    9.8 hours expended by Ms. Bosavanh for a total of **$1,704.93**;

8           b.    41.75 hours expended by Mr. Wilborn for a total of **$7,358.93**; and

9       2.    This amount is payable to Plaintiff pursuant to *Astrue v. Ratliff*, __ U.S. __, 130 S.

10           Ct. 2521 (2010).

11

12

13   IT IS SO ORDERED.

14   **Dated:   December 22, 2011**              **/s/ Sheila K. Oberto**

15                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28